# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO.: 3:16-cr-93-J-32JRK |
| ) | |
| CORRINE BROWN, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## DEFENDANT CORRINE BROWN'S SENTENCING MEMORANDUM

COMES NOW THE DEFENDANT, by and through the undersigned attorney, and hereby submits this sentencing memorandum and request for a reasonable sentence. Specifically, Corrine Brown requests that this Court impose a term of probation. Ms. Brown makes this request for the following reasons:

First, given the personal history and characteristics of Corrine Brown, a guidelines sentence would be greater than necessary to accomplish the statutory goals of sentencing. Second, a comparison of this case with the facts and circumstances of other public integrity cases proves that a below-Guidelines sentence is warranted. Third, Corrine Brown's lack of criminal history justifies a below-Guidelines sentence. Fourth, a sentence based on the Guideline 2B1.1 loss table would be greater than necessary to accomplish the statutory goals of sentencing. Finally, an alternative sentence that involves

community service would be a better method of accomplishing the statutory goals of sentencing.

## INTRODUCTION

During Corrine Brown's seventy years on this Earth, there have been many remarkable changes in the United States. The civil rights movement and the many African Americans and people of all races who have fought the fight against racism, prejudice, and discrimination, have dramatically changed this nation for the better. Corrine Brown has been one of the greatest soldiers in this movement. The story of Corrine Brown is the story of a woman who literally changed the city of Jacksonville, the state of Florida, and the United States.

Attached to this sentencing memorandum, as appendix, is a comprehensive mitigation report prepared by Carlos Dawson. Mr. Dawson is a mitigation expert, with over twenty years of experience as a United States Probation Officer. Prior to preparing the report, Mr. Dawson reviewed the Presentence Report and conducted a comprehensive background investigation of Corrine Brown. Corrine Brown requests that the Court use this report and the facts contained therein as the basis for the requests contained in this memorandum.

## I. SENTENCING OPTIONS AND GUIDELINE RANGE CALCULATION

As the Court is well aware, there is no statutory requirement that Corrine Brown be sentenced to a term of confinement. For counts 1, 2, 4, 6-8, 9-13, 15, and 17: The maximum term of imprisonment is 20 years. 18 U.S.C. §§ 1341, 1343, 1349 and 2. Count 19: The maximum term of imprisonment is five years. 18 U.S.C. § 1001(a)(1). Counts 21 and 22- 24: The maximum term of imprisonment is three years. 26 U.S.C. §§ 7212(a) and 7206(1). Based upon a total offense level of 29 and a criminal history category of I, the guideline imprisonment range is 87 months to 108 months.

**ARGUMENT**

## II. REQUEST FOR A REASONABLE SENTENCE

This court is required to impose a reasonable sentence in accordance with the requirements of 18 U.S.C. 3553(a). The court should consider the following factors:

1. The nature and circumstances of the case;
2. The need for the sentence imposed to:
   a. Reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   b. Afford adequate deterrence to criminal conduct;
   c. Protect the public from further crimes of the defendant;

   d. Provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

 3. The kinds of sentences available;

 4. The advisory guideline range;

 5. The need to avoid unwarranted sentencing disparities among defendants with similar records; and,

 6. The need to provide restitution to any victim of the offense.

 All of these factors support Corrine Brown's requested sentence of probation.

 Given her record of public service, Corrine Brown respectfully requests that this Court, pursuant to 18 U.S.C. 3553(a), grant her a variance from the advisory guideline range. Corrine Brown also requests that this Court grant her any departure warranted by the facts of this case.

### III. GIVEN THE PERSONAL HISTORY AND CHARACTERISTICS OF CORRINE BROWN A GUIDELINES SENTENCE WOULD BE GREATER THAN NECESSARY TO ACCOMPLISH THE STATUTORY GOALS OF SENTENCING

 The Sentencing Guidelines are discretionary and with good reason. Mandatory Guidelines can result in profoundly unfair sentences. Numerous cases have established a fundamental principal: the Court's role is to make an individualized assessment of the proper punishment. *Gall v. United States*, 552

U.S. 38, 50 (2007). In this case, a sentence of 87 to 108 months is far greater than necessary to serve the interests of sentencing outlined in 18 U.S.C. § 3553(a). Corrine Brown's conduct, her personal characteristics and accomplishments, and the humiliation and ostracization she has already experienced during the trial demonstrate that a term of probation with a condition of community service is the appropriate sentence.

**A. Corrine Brown's History of Public Service Justifies a Variance and a Departure from the Advisory Guideline Range**

As the Court is well aware, *United States v. Rita, 551 U.S. 338, 365 (2007)* allows this Court to consider Corrine Brown's long and extensive history of good deeds and public service. See also *United States v. Adelson*, 441 F.Supp. 2d 506, 513-14 (S.D.N.Y. 2006) in which the court recognized the defendant's extensive history of compassion and generosity pursuant to 18 U.S.C. § 3553(a).

The character letters submitted to the Court clearly demonstrate that Corrine Brown is well known for her decades of public service. The letters uniformly describe Corrine Brown as a compassionate advocate for people of all races. They also paint a portrait of a woman who consistently fought to open the doors of our governmental institutions to those who had been locked out due to racism and sexism. At the sentencing hearing

5

the Court will hear dozens of witnesses who provide specific concrete examples of how Corrine Brown has positively impacted their lives.

**B. Corrine Brown's Strong Family Ties Justify A Variance And A Departure From The Advisory Guideline Range**

18 U.S.C. 3553(a) allows this Court to take into consideration Corrine Brown's family ties when determining an appropriate sentence. See *United States v. Nellum*, No. 2-2:04-CR-30, 2005 BL 88941 at 4 (N.D. Ind. Feb. 3, 2005). Corrine Brown, despite growing up in less than ideal family circumstances, has a strong supportive family. Corrine Brown has a close relationship with her mother who is currently suffering from dementia and is unable to take care of herself.

Corrine Brown is also close with her daughter, Shantrel Brown. Shantrel Brown, with her mother's guidance and love, attended college, graduated from law school, and is now a respected governmental affairs specialist in Washington D.C. These strong family bonds will provide the supportive network that she needs in the event the Court decides to impose a term of probation. It goes without saying that the corrective measures Corrine needs will be more effective if she is allowed to remain with her loving and supportive family.

## IV. COMPARISON OF THIS CASE WITH THE FACTS AND CIRCUMSTANCES OF OTHER PUBLIC INTEGRITY CASES PROVES THAT A BELOW-GUIDELINES SENTENCE IS JUSTIFIED

Corrine Brown's Conduct Is Far Outside The Heartland Of Public Corruption Convictions. 18 U.S.C. § 3553(a)(1) requires that this Court consider the nature and circumstances of offense in determining the sentence to be imposed. As the Court noted in *Koon v. United States*, 518 U.S. 81, 94 (1996) factors that may make a case atypical provide potential bases for departures from the guidelines.

The essence of the United States' case against Corrine Brown was that she conspired to commit mail and wire fraud, committed mail and wire fraud, and failed to be truthful when she submitted her tax returns and financial disclosure forms. Compared to other public integrity cases, Corrine Brown's action are the least egregious. There is no evidence that Corrine Brown engaged in quid pro quo behavior.

While the United States in its sentencing memorandum notes that there is not one case in which a public official convicted in federal court has received a sentence of probation, the United States fails to point out that the facts of Corrine Brown's case are substantially different from those cases.

7

When deciding upon an appropriate sentence in this case it is appropriate for the Court to consider other public integrity convictions. The major public integrity convictions over the past several years include:

- **United States v. Gov. Bob McDonnell**

    Governor McDonnell was sentenced to 2 years in prison. The facts of his case were far more egregious than those in this case. Governor McDonnell was convicted of using the prestige of his office to provide favors for businessman Jonnie R. Williams Sr. in exchange for $177,000 in loans, vacations and luxury items. The probation office recommended that Governor McDonnell get a sentence of 10 years, 1 month to 12 years 7 months but the Court in that case imposed a sentence of 2 years in prison, a sentence that was a substantial variance from the advisory guideline range.

- **Former Congressman William J. Jefferson**

    Former Congressman Jefferson was sentenced to 13 years in prison for accepting hundreds of thousands of dollars in bribes. Again, the facts of his case were far more egregious than the facts in the instant case. His PSR recommended a sentencing range of 27 to 33 years. Again the sentence imposed in that case was a substantial departure from the guideline range.

- **Congressman Richard Renzi**

Congressman Renzi was sentenced to 36-months in prison. In his case the government sought a sentence of 108-144 months, which the Court rejected. Again the facts of that case were more egregious than the facts of this case. Congressman Renzi was convicted of supporting federal land exchange legislation in exchange for personal benefits. Despite this fact he received a substantial variance.

A sentence below the guideline range would be necessary to avoid unwarranted sentencing disparities under 18 U.S.C. § 3553(a)(6). As the United States concedes in its sentencing memorandum, this is the most daunting challenge for the Court in this case. Prior to imposing a sentence in this case, the Court here will sentence Carla Wiley and Ronnie Simmons for similar acts.

While Ms. Wiley and Mr. Simmons did plead guilty, their cases do not have the extensive mitigating and extenuating factors that are present in this case. The United States would have to concede that neither Carla Wiley nor Ronnie Simmons have the extensive record of good works and public service.

In summary, in all of these cases, cases that were much more serious than the facts of this case, the defendants received substantial variances, and were all allowed to remain free on bond pending appeal.

## V. A PRISON SENTENCE IS NOT NEEDED TO PROTECT THE PUBLIC FROM FURTHER CRIMES BY CORRINE BROWN

The Court is required by 18 U.S.C. § 3553(a)(2)(C) to impose a sentence that protects the public from further crimes of the defendant. The facts and circumstances of this case and the personal history of Corrine Brown clearly demonstrate that she presents no risk of recidivism.

In 2012 the United States Department of Justice published a report[1] that found that the risk of recidivism is high when there is a defendant who has a history of drug use, prior criminal activity, mental health issues, and lacks strong family and community ties. None of those factors are present in this case.

Furthermore, the study noted that elderly defendants are less likely to reoffend. Corrine Brown will be seventy-one years old at the time of sentencing. Courts have consistently imposed below guidelines sentences when there has been evidence that the defendant is elderly and infirm.

Corrine Brown's life from this point forward will be extremely difficult. She will never hold public offense again. The stigma of her federal convictions will make it extremely difficult, if not impossible, for her to find productive and gainful employment. There is simply no reasonable basis to believe that she will ever commit another crime.

---

[1] William Rhodes, et. al., Recidivism of Offenders on Federal Community Supervision at 1, Abt. Associates, Dec. 21, 2012.

## VI. CORRINE BROWN'S LACK OF CRIMINAL HISTORY SUPPORTS A SENTENCE OF PROBATION

A variant sentence is particularly appropriate where a defendant has no criminal history. As distinguished from someone who has 1 criminal history point, Corrine Brown is a true first time offender with a lifetime record of obeying the law. A district court may depart below the advisory guidelines in instances where the court concludes that the offense of conviction is a single aberrant act of criminal behavior".

Corrine Brown has never been arrested for or convicted of any crime prior to this case. Where a defendant's criminal conduct is an aberration from a lifetime of abiding by the law it is appropriate for a Court to impose a sentence that does not include incarceration.

## VII. A SENTENCE OF IMPRISONMENT BASED ON USSG 2B1.1 WOULD BE UNJUST IN THIS CASE

The total offense level in this case is driven largely by the loss table in 2B1.1. Most in the legal community now realize that the loss table in 2B1.1 results in unnecessarily harsh sentences. The American Bar Association and the United States Sentencing Commission are just two of the many organizations that have criticized and called for the reform of 2B1.1.

Additionally, the evidence at trial established that of the funds misappropriated from the One Door for Education accounts, Corrine Brown received the lowest amount. It would be unjust for Corrine Brown to receive the harshest sentence when the facts of the trial clearly established that Carla Wiley and Ronnie Simmons stole the majority of the money.

Corrine Brown's life has been a life of service. Nothing in her life would suggest that she would ever engage in the allegations brought by the prosecution in this case. In fact, the phrase that has defined her political career, Corrine Delivers was earned because of her history of dedicated public service.

As the Court is well aware, a well-documented history of public service can be a valid basis for a variance from the recommended guideline range. Corrine Brown requests that this Court grant her a departure from the advisory guideline range pursuant to USSG 5H1.11.

### VIII. THE PUBLIC HUMILIATION AND OSTRACIZATION CORRINE BROWN HAS EXPERIENCED ARE POWERFUL DETERRENTS AGAINST CRIMINAL CONDUCT

The notoriety of this case and the effect it already has had on Corrine Brown is a significant deterrent effect against the kind of conduct of which she was convicted. During the pendency of this case personal attacks on her character have

appeared in local and national newspapers, on television, on Internet blogs and other websites, and nearly every other form of media. Coverage of Corrine Brown in the local news has been particularly harsh, with many news outlets reverting to racially charged headlines and reporting.

**IX. <u>CORRINE BROWN'S AGE AND LACK OF RISK OF RECIDIVISM MAKE A SENTENCE OF INCARCERATION UNNECESSARY</u>**

Corrine Brown is a 70-year-old woman who has a number of physical health problems that are well documented by the PSIR. As this Court is well aware, most experts believe that the elderly present a significantly lower risk of recidivism.

As a result of the indictment that was handed down during the primary election, Corrine Brown lost her bid for reelection. The sad fact is that she will never hold elective office again. Thus, there is no risk that she will ever commit a public integrity offense again.

If there is one overriding theme that is present in the United States' Sentencing Memorandum it is retribution. The United States Sentencing Memorandum begins with what can only be described as an effort to paint Corrine Brown as an angry woman who has consistently attacked the Unites States and has raised the possibility that race has been a factor in some of the things that have happened to her during her political career.

What the United States fails to take into consideration is that Corrine Brown was born and raised in a country that is very different from the one we live in today. African Americans of her generation grew up in a nation where racism was the official law of the land. They know very well the sordid history of this nation when it comes to the treatment of African Americans because they experienced it first hand. They went to the segregated schools, they were forced to live in the segregated neighborhoods, they saw family members and friends mistreated by what was then a racist criminal justice system, and they know exactly why many cities in the south have streets named Division Avenue.

Corrine Brown, like all African American elected officials in the South, had to deal with the constant presence of racism. It has had an effect on her campaigns and it has had an effect on how the media portray her. Just a cursory look at the public comments sections on news websites reveals just how many racists still take every opportunity to insult her and other prominent African American politicians. Ask most African Americans and they will tell you our greatest fear is that we have to be twice as good just to be considered equal by some, that the system is waiting for and expects us to fail, and that the insidious virus

of racism that was codified in this nation's Constitution and laws will never truly go away.

If Corrine Brown said some less than kind things about the FBI it is because she and many other African Americans of her generation still remember the FBI as the organization that engaged in smear campaigns against Martin Luther King and Malcolm X and every other leader of the civil rights movement. This reflexive fear of the FBI is like muscle memory.

One would think that knowing this history and the understandable stress of being prosecuted by the federal government the United States would show some grace to Corrine Brown for whatever statements she made prior to trial.

## X. THIS COURT HAS THE AUTHORITY TO IMPOSE A CREATIVE AND COMPASSIONATE SENTENCE THAT WILL FURTHER THE INTERESTS OF JUSTICE

A significant sentence of imprisonment in this case would not serve the interests of justice. The advisory guideline range in this case is 87-108 months and the government is likely to recommend either a sentence at the high end of the guideline range or even an upward variance.

If the Court were to follow this sentencing recommendation it would amount to a life sentence for Corrine Brown. Prison is a harsh environment that is designed to punish. A prison

sentence of 108 months would be devastating, emotionally and physically, for Corrine Brown.

Rather than imposing a term of incarceration, this Court could instead sentence Corrine Brown to probation and home confinement and order her to perform extensive community service. Jacksonville is a city that, despite some of its recent advancements, still faces significant challenges. There is rampant homelessness, particularly with regard to veterans. Minority children still lag behind their counterparts when it comes to educational achievement.

Corrine Brown has been instrumental in providing solutions to these problems for years and frankly the city of Jacksonville could use the talents of Corrine Brown. Her experience in government and her work with local churches and civil rights organizations provides this Court with the chance to engage in restorative justice.

The United States' sentencing recommendation is driven primarily by a desire to punish and to send signals to the public. The United States cannot find even the slightest amount of compassion to acknowledge all the good that Corrine Brown has done, which includes:

- Bringing billions of federal government dollars to Jacksonville to improve schools, roads, and infrastructure;

- Encouraging African Americans and other minorities to run for elective office;

- Providing political education to underrepresented communities and encouraging them to vote;

- Mentoring minority and poor students;

- Supporting and voting for legislation that advanced the interests of unions;

- Working with Republicans and independents to advance the interests of Jacksonville;

- Advocating for cities such as Eatonville that are often forgotten due to their demographic composition.

Frankly, if the undersigned were to list all of the political, civic, and charitable contributions of Corrine Brown, this document would be at least a thousand pages long. Corrine Brown's trademark phrase, Corrine Delivers, is a recognition of all that she has done for this city and this nation.

This Court could allow Corrine Brown to repay her debt to society by performing extensive community service. If the United States' recommendation is accepted, Corrine Brown will go to

17

prison for at least seven years. During that time she will not have the ability to do anything to make a positive contribution to society. She will simply be warehoused. While this sentence may be satisfying to some who simply want to see her locked up, Corrine Brown is confident that this Court will recognize that justice in this case can be achieved by allowing her to do what she does best: helping people.

## **CONCLUSION**

In conclusion, Corrine Brown's over forty years of dedicated public service, her age, her health, and a comparison of other public integrity cases with her case justify a sentence of probation. The interests of justice would not be served by imposing a sentence of imprisonment. Corrine Brown respectfully requests that this Court show mercy and compassion and impose a term or probation.

**WHEREFORE,** the undersigned respectfully requests that the court impose a reasonable sentence, which in this case, would be a sentence of probation along with a term of extensive community service.

**CERTIFICATE OF SERVICE**

I **HEREBY CERTIFY** that this document was electronically filed today with the Clerk of the Court by using the CM/ECF system which will send electronic notice of this filling to all counsel of record.

**CPLS, P.A.**

Attorneys│Consultants│ Mediators
201 E. Pine Street, Suite 445
Orlando, Florida 32801
407-647-7887/407-647-5396
Attorney for Defendant
CPLS File No. 2349-1

Dated: November 10, 2017        /S/James W. Smith, III___
James W. Smith III, Esq.
Florida Bar No. 96438
jsmith@cplspa.com